STATE OF NORTH CAROLINA v. TAMICA YVETTE MIMS

No. COA06-10

(Filed 5 December 2006)

## 1. Constitutional Law— right to counsel—conflicts of interest

The trial court erred in a trafficking in heroin by possession and possession of drug paraphernalia case by failing to conduct a hearing regarding defense counsel's potential conflict of interest where defendant claimed possession of the heroin and the paraphernalia to protect the father of her child who was represented by defense counsel's boss, because: (1) the right to counsel under the United States and North Carolina Constitutions includes a right to representation that is free from conflicts of interest; (2) when a trial court is made aware of a possible conflict of interest, the trial court must take control of the situation and should conduct a hearing to determine whether there exists such a conflict of interest that defendant will be prevented from receiving advice and assistance sufficient to afford him the quality of representation guaranteed by the Sixth Amendment; (3) the failure to hold such a hearing in and of itself constitutes reversible error; (4) defendant did not waive her right to conflict-free counsel; and (5) it cannot be determined from the face of the record whether an actual conflict of interest adversely affected defense counsel's performance, and an evidentiary hearing must be conducted by the trial court on remand.

## 2. Sentencing— intensive probation—no reference to sentence in transcript—defendant not present at time written judgment entered

The trial court erred in a trafficking in heroin by possession and possession of drug paraphernalia case by sentencing defendant to nine months of intensive probation, because: (1) where the written judgment represents a substantive change from the sentence pronounced by the trial court and defendant was

STATE v. MIMS

[180 N.C. App. 403 (2006)]

not present at the time the written judgment was entered, the sentence should be vacated and the matter remanded for entry of a new sentencing judgment; and (2) although the written judgment imposed a sentence of nine months of intensive probation on defendant and the jury notes taken by the clerk who attended the trial demonstrated that the sentence of nine months' probation was announced in open court, the transcript contained no reference to this sentence and defendant was not present at the time the written judgment was entered.

Appeal by Defendant from judgments dated 19 April 2005 by Judge Milton F. Fitch Jr. in Superior Court, Durham County. Heard in the Court of Appeals 21 September 2006.

*Attorney General Roy Cooper, by Assistant Attorney General John C. Evans, for the State.*

*Russell J. Hollers III for Defendant.*

McGEE, Judge.

Tamica Yvette Mims (Defendant) was convicted of trafficking in heroin by possession and of possession of drug paraphernalia. Prior to trial, Defendant moved to dismiss the charges based upon a lack of probable cause. In support of the motion, defense counsel argued as follows:

All of the items implicating someone in that matter is another defendant who is not present in this courtroom today, Your Honor. And the only reason [Defendant] is here is because of a spoken word which was out of fear and protection for her son's father who was at the residence when the officer arrived in custody. . . .

The officer served a warrant. They entered the residence. The owner of the residence wasn't there. They arrested Mr. Chavis who was there. The items that were found were circumstantial linking Mr. Chavis to the crime. However, [Defendant] walks in a couple of minutes later. [Defendant] sees her son's father in handcuffs. [Defendant] doesn't have a record. He has a record. [Defendant] says, "This is mine," Your Honor. This is why we're sitting here today. . . .

This is her child's father. She knew what he was facing. We don't believe that he was guilty of these crimes as well. They were

there for Duke Power people to cut the lights on for a friend who was not in the residence at the time and [Defendant] simply wanted to protect her child's father, Your Honor. [Defendant] didn't have a record. He had a record. [Defendant] came in and she saw him being handcuffed.

The trial court denied Defendant's motion to dismiss. In light of defense counsel's statements outlining the defense, the State brought a potential conflict of interest to the trial court's attention:

[THE STATE]: I want to be clear Your Honor brought this up with defense counsel now he has mentioned what the defense is. Mr. Chavis is presently charged with heroin offenses as well, is represented by counsel's boss. I want to make sure this is not a conflict of interest. They're going to be using the defense.

THE COURT: Conflict of interest is for them to determine, isn't it? That's not the [S]tate's business, is it?

[THE STATE]: No, sir.

THE COURT: That's between clients and lawyers.

[THE STATE]: Yes, sir.

THE COURT: That's an ethical situation. That's no concern of yours.

[THE STATE]: State is ready to proceed, Your Honor.

At trial, a police investigator with the Durham Police Department, Kelly Green (Investigator Green), testified that he and several other officers executed a search warrant at a residence located in Durham at 313 Sowell Street, Apartment B, on 21 February 2003. The officers found one person, later identified as Reginald Chavis, inside the residence. Investigator Green testified that a police canine was released into the residence and that the canine went into a bedroom and "indicated on a black flight jacket that was hanging on the bed and indicated around the corner of the bed." Investigator Green further testified he found what appeared to be a "pelletized large piece of heroin" inside the flight jacket. He also found a shoe box that contained drug paraphernalia underneath the bed. The shoe box contained a "coffee grinder, digital scales, a box of glassine baggies, . . . used to package heroin[,]" and a black plate containing what appeared to be drug residue. The substances found in the flight jacket and in the shoe box were later confirmed to be heroin.

J.C. Husketh (Investigator Husketh), an investigator with the Durham Police Department, testified that he was one of the officers who executed the search warrant at 313 Sowell Street, Apartment B, on 21 February 2003. Investigator Husketh testified that during the search of the premises, Defendant drove up in a vehicle and walked to the front entrance of the apartment. Investigator Husketh further testified that "[a]fter Mr. Chavis was placed in handcuffs and we were about ready to leave the property, . . . [Defendant] stated that 'everything in the house is mine.' " Investigator Husketh testified that Defendant was placed in handcuffs and transported to the police station. Investigator Husketh read Defendant her *Miranda* rights and Defendant agreed to speak to police. Defendant told Investigator Husketh that she lived in Apartment B at 313 Sowell Street and that everything in the apartment belonged to her. She also said that Reginald Chavis was her boyfriend.

Investigator Husketh asked Defendant to tell him what was found inside the apartment; Defendant said that drugs were found. When asked what type of drugs were found, Defendant said that heroin was found in a shoe box. Investigator Husketh also asked Defendant what the coffee grinder was used for and Defendant said it was used "to cut it[.]" Investigator Husketh further testified that Defendant described a technique for packaging heroin as follows:

> [Defendant] advised that she would weigh the drugs out, which would be the scales would be used . . . to minimize a loss. You don't want to add too much drugs to the product. At that point, [Defendant] advised that the contents or the heroin would be placed into the bags. The bags would be folded and the bags— after it was folded, the contents would be—well, actually the bags would be taped in order to keep any of the contents from falling out of the bag.

Defendant testified at trial that she did not live at 313 Sowell Street in February 2003. Defendant said she dropped Reginald Chavis off at that location on 21 February 2003 so that he could meet someone from Duke Power Company who was scheduled to turn on the electricity. Reginald Chavis was doing this as a favor for a friend who lived at that location. Defendant further testified that she went home, changed clothes, and went to work. When she returned to 313 Sowell Street later in the day, police were there. Defendant testified that she saw Reginald Chavis handcuffed and that she told police that everything in the house belonged to her. Defendant testified that she told police the substances belonged to her to protect Reginald Chavis.

On cross-examination, Defendant testified as follows:

Q. And you're saying that you did all this to protect Reginald Chavis?

A. Yes, sir.

Q. Have you asked Mr. Chavis to come here and testify?

A. No, sir.

Q. Have you talked to him?

A. Yes, I have.

Q. When did you last talk to him?

A. Last Saturday.

Q. The time before that?

A. Probably two Saturdays before that.

. . .

Q. Do you want him to come up before this jury and tell him to support your statement and your story here today?

A. No, sir.

. . .

Q. Have you ever discussed this with him?

A. Discussed what?

Q. These charges.

A. I talked to him about it.

Q. You're telling us that he's going to let you just take the charges? Is that what you're saying?

A. I guess.

Q. If he's going to let you just take the charges, does that tell you something about how he cares about you?

A. Yes.

Q. Why don't you call him here before this jury so they can find out whether or not this story holds any truth?

A. I don't know.

Q. Do you want to call him?

A. No, sir.

Defendant was convicted of trafficking in heroin by possession and of possession of drug paraphernalia.

At sentencing, the trial court stated as follows:

> [D]efendant having entered a plea of not guilty, being tried by a jury of her peers, she is found guilty of a class F felon[y] of trafficking in heroin, a felony—F. The [Trial] Court will impose the mandatory minimum of 70 months minimum, 84 months maximum and fine her $50,000. This sentence is in the Department of Correction[], quarters for women.

> And the possession of drug paraphernalia for which [Defendant] is a class II misdemeanor, one prior point, is a class I. Give her 45 days to run at the expiration of the sentence imposed in this case to date. This sentence is suspended. She is placed on intermediate punishment.

> The intermediate punishment, [Defendant] is to pay the cost of this action. She shall not associate with any known users, dealers, narcotics. She shall perform 72 hours of community service and pay the fee associated therewith. Let her pay a fine in the amount of $500.

The trial court entered written judgment dated 19 April 2005, sentencing Defendant to a term of seventy months to eighty-four months in prison on the charge of trafficking in heroin by possession. On the charge of possession of drug paraphernalia, the trial court sentenced Defendant to a consecutive term of forty-five days in prison. However, the trial court suspended the sentence and placed Defendant on supervised probation for twenty-four months. As a special condition of probation, the trial court provided that "[Defendant] is not to associate with, or be in the presence of anyone using controlled substance[s]. [Defendant] is to report to probation [within] 24 [hours] of being released from active sentence in count 1." The trial court did not check the box next to the provision which reads: "Comply with the Special Conditions of Probation— Intermediate Punishments—Contempt which are set forth on AOC-CR-603, Page Two." However, the trial court entered an AOC-CR-603, Page Two form dated 19 April 2005, sentencing

Defendant to intensive probation for a period of nine months. On that same form, the trial court also stated as follows: "72 hours [community] service and pay $200.00 [Defendant] has 90 days to complete these [hours]." Defendant appeals.

I.

[1] Defendant first argues the trial court erred by failing to conduct a hearing regarding defense counsel's potential conflict of interest. We agree.

A criminal defendant subject to imprisonment has a Sixth Amendment right to counsel. *Argersinger v. Hamlin*, 407 U.S. 25, 37, 32 L. Ed. 2d 530, 538 (1972). The Sixth Amendment right to counsel applies to the states through the Fourteenth Amendment of the United States Constitution. *State v. James*, 111 N.C. App. 785, 789, 433 S.E.2d 755, 757 (1993). Sections 19 and 23 of the North Carolina Constitution also provide criminal defendants in North Carolina with a right to counsel. *Id.* The right to counsel includes a right to "representation that is free from conflicts of interests." *Wood v. Georgia*, 450 U.S. 261, 271, 67 L. Ed. 2d 220, 230 (1981).

When a defendant fails to object to a conflict of interest at trial, a defendant "must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348, 64 L. Ed. 2d 333, 346-47 (1980); *see also State v. Bruton*, 344 N.C. 381, 391, 474 S.E.2d 336, 343 (1996). "[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." *Cuyler*, 446 U.S. at 349-50, 64 L. Ed. 2d at 347. However, when a trial court is made aware of a possible conflict of interest, "the trial court must 'take control of the situation.' " *James*, 111 N.C. App. at 791, 433 S.E.2d at 758 (citation omitted). Further, the trial court should conduct a hearing " 'to determine whether there exists such a conflict of interest that the defendant will be prevented from receiving advice and assistance sufficient to afford him the quality of representation guaranteed by the [S]ixth Amendment.' " *Id.* (citation omitted). The failure to hold such a hearing, "in and of itself, constitutes reversible error." *Id.* at 791, 433 S.E.2d at 759.

In *James*, the defendant was convicted of second-degree murder for shooting the victim. *Id.* at 786, 433 S.E.2d at 755-56. At trial, a prosecution witness testified that he was present at the scene of the shooting, heard a gun shot, and then saw a gun in the defendant's

hand. *Id.* at 787, 433 S.E.2d at 756. During cross-examination of the witness, defense counsel acknowledged that he had previously represented the witness on an unrelated drug charge. *Id.* at 788, 433 S.E.2d at 757. However, although defense counsel brought the potential conflict to the attention of the trial court, the trial court did not conduct an inquiry into the possible conflict of interest. *Id.* at 791, 433 S.E.2d at 759. Our Court held that the failure to conduct an inquiry was reversible error. *Id.* Our Court then found that although the ordinary course of action would be to remand the case for the trial court to conduct such a hearing, the record "clearly show[ed] on its face that the conflict adversely affected counsel's performance[.]" *Id.* Therefore, our Court ordered a new trial. *Id.*

Our Court followed *James* in *State v. Hardison*, 126 N.C. App. 52, 483 S.E.2d 459 (1997), where the defendant filed a motion for appropriate relief to challenge his guilty pleas to first-degree burglary and second-degree kidnapping. *Id.* at 53, 483 S.E.2d at 460. The defendant argued that his guilty pleas were invalid because his attorney had a conflict of interest which deprived the defendant of effective assistance of counsel. *Id.* The trial court denied the defendant's motion without conducting an evidentiary hearing and the defendant filed a petition for writ of certiorari, which our Court allowed. *Id.* Citing *James*, our Court recognized that where a trial court becomes aware of even the "mere possibility" of a conflict of interest prior to the conclusion of a trial, the trial court must conduct a hearing to determine whether the conflict will deprive a defendant of his Sixth Amendment right to counsel. *Id.* at 55, 483 S.E.2d at 461 (citing *James*, 111 N.C. App. at 791, 433 S.E.2d at 758). Our Court held that "the [trial] court . . . erred in summarily entering its order denying [the] defendant's motion for appropriate relief, without conducting an evidentiary hearing to address the issues of fact surrounding counsel's alleged conflict of interest." *Id.* at 56, 483 S.E.2d at 461. Therefore, our Court remanded the matter for an evidentiary hearing. *Id.* at 58, 483 S.E.2d at 462.

In the present case, as in *James* and *Hardison*, a potential conflict of interest was brought to the attention of the trial court. The State brought the potential conflict to the trial court's attention as follows:

[THE STATE]: I want to be clear Your Honor brought this up with defense counsel now he has mentioned what the defense is. Mr. Chavis is presently charged with heroin offenses as well, is rep-

resented by counsel's boss. I want to make sure this is not a con-
flict of interest. They're going to be using the defense.

However, the trial court did not hold an evidentiary hearing to deter-
mine whether the potential conflict of interest could affect
Defendant's right to counsel under the United States Constitution and
the North Carolina Constitution. Because Defendant argued at trial
that she claimed possession of the heroin and the paraphernalia to
protect Mr. Chavis, the father of her child, and because Mr. Chavis
was represented by defense counsel's boss, there was at least the
potential for a conflict. *See* N.C. Rules of Professional Conduct, Rule
1.7(a) (2006) (stating that "a lawyer shall not represent a client if the
representation involves a concurrent conflict of interest"); *see also*
N.C. Rules of Professional Conduct, Rule 1.10(b) (2006) (stating that
"[w]hile lawyers are associated in a firm, none of them shall know-
ingly represent a client when any one of them practicing alone would
be prohibited from doing so by Rules 1.7 or 1.9[.]"). Moreover,
Defendant did not waive her right to conflict-free counsel. *See James*,
111 N.C. App. at 791-92, 433 S.E.2d at 759 (recognizing that "the Sixth
Amendment right to conflict-free representation can be waived by a
defendant, if done knowingly, intelligently and voluntarily."). In the
present case, unlike in *James*, we are unable to determine from the
face of the record whether an actual conflict of interest adversely
affected Defendant's Counsel's performance. Therefore, as in
*Hardison*, we remand the matter to the trial court for an evidentiary
hearing. *See Hardison*, 126 N.C. App. at 58, 483 S.E.2d at 462
(remanding the matter to the trial court for an evidentiary hearing
regarding the defendant's motion for appropriate relief).

The State relies on *Mickens v. Taylor*, 535 U.S. 162, 152 L. Ed. 2d
291, *reh'g denied*, 535 U.S. 1074, 152 L. Ed. 2d 856 (2002). The State
argues that, based upon *Mickens*, "it is not the potential for a conflict,
as in the instant case, but an actual conflict that triggers the [trial]
court's obligation to conduct an inquiry." However, the State miscon-
strues the Supreme Court's holding in *Mickens*; *Mickens* is not incon-
sistent with our Court's holdings in *James* and *Hardison*.

In *Mickens*, the petitioner was convicted and was sentenced to
death in Virginia state court for "the premeditated murder of Timothy
Hall during or following the commission of an attempted forcible
sodomy." *Id.* at 164, 152 L. Ed. 2d at 299. The petitioner filed a peti-
tion for writ of habeas corpus in the United States District Court for
the Eastern District of Virginia. *Id.* The petitioner alleged he was
denied effective assistance of counsel because one of his trial attor-

neys, Bryan Saunders (Saunders) had a conflict of interest. *Id.* Saunders was representing Timothy Hall (Hall), a juvenile, on assault and concealed weapons charges at the time Hall was allegedly murdered by the petitioner. *Id.* After Hall's death, a juvenile court judge dismissed the charges against Hall. *Id.* at 164-65, 152 L. Ed. 2d at 299-300. Three days later, the same judge appointed Saunders to represent the petitioner. *Id.* at 165, 152 L. Ed. 2d at 300. Saunders failed to disclose to the trial court or to the petitioner that he had previously represented Hall. *Id.*

The District Court held an evidentiary hearing and denied the petition for habeas corpus. *Id.* A divided panel of the Fourth Circuit Court of Appeals reversed, and the Fourth Circuit granted rehearing en banc. *Id.* The Fourth Circuit "assumed that the juvenile court judge had neglected a duty to inquire into a potential conflict, but rejected [the] petitioner's argument that this failure either mandated automatic reversal of his conviction or relieved him of the burden of showing that a conflict of interest adversely affected his representation." *Id.* The Fourth Circuit held, relying upon *Cuyler*, that "a defendant must show 'both an actual conflict of interest and an adverse effect even if the trial court failed to inquire into a potential conflict about which it reasonably should have known[.]' " *Id.* (quoting *Mickens v. Taylor*, 240 F.3d 348, 355-56 (4th Cir. 2001)). Because the Fourth Circuit concluded that the petitioner had not demonstrated adverse effect, it affirmed the District Court's denial of the petition. *Id.*

On appeal to the United States Supreme Court, the petitioner argued that "where the trial judge neglects a duty to inquire into a potential conflict, the defendant, to obtain reversal of the judgment, need only show that his lawyer was subject to a conflict of interest, and need not show that the conflict adversely affected counsel's performance." *Id.* at 170, 152 L. Ed. 2d at 303. However, the Supreme Court rejected this position, holding as follows:

Since this was not a case in which (as in *Holloway*) counsel protested his inability simultaneously to represent multiple defendants; and since the trial court's failure to make the [*Cuyler*]-mandated inquiry does not reduce the petitioner's burden of proof; it was at least necessary, to void the conviction, for [the] petitioner to establish that the conflict of interest adversely affected his counsel's performance. The Court of Appeals having found no such effect, see 240 [F.3d] at 360, the denial of habeas relief must be affirmed.

*Id.* at 173-74, 152 L. Ed. 2d at 305. The Supreme Court noted that "[a]n 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." *Id.* at 172 n. 5, 152 L. Ed. 2d at 304 n. 5.

In the present case, unlike in *Mickens*, an evidentiary hearing has not been held. Therefore, we are unable to determine whether Defendant was denied the right to counsel under the United States Constitution and the North Carolina Constitution. We remand the matter to the trial court to conduct a hearing to determine whether Defendant was deprived of her right to counsel. *See Wood*, 450 U.S. at 273-74, 67 L. Ed. 2d at 231 (remanding to the trial court for a hearing to determine whether an actual conflict of interest existed at the time of the probation revocation hearing). On remand, Defendant has the burden, as articulated in *Mickens*, *Cuyler* and *James*, of showing that an actual conflict of interest existed and that it adversely affected her counsel's performance. *Mickens*, 535 U.S. at 173-74, 152 L. Ed. 2d at 305; *Cuyler*, 446 U.S. at 348, 64 L. Ed. 2d at 346-47; *James*, 111 N.C. App. at 789, 433 S.E.2d at 757. Because the trial court may determine that Defendant was not denied the right to counsel, and therefore may not order a new trial, we consider Defendant's remaining assignment of error.

## II.

**[2]** Defendant argues the trial court erred by sentencing her, *in absentia*, to nine months of intensive probation. We agree. The written judgment entered by a trial court constitutes the actual sentence imposed on a criminal defendant; the announcement of judgment in open court is merely the rendering of judgment. *State v. Crumbley*, 135 N.C. App. 59, 66, 519 S.E.2d 94, 99 (1999). A defendant has a right to be present at the time a sentence is imposed. *Id.*; *see also State v. Davis*, 167 N.C. App. 770, 776, 607 S.E.2d 5, 9 (2005). Where the written judgment represents a substantive change from the sentence pronounced by the trial court, and the defendant was not present at the time the written judgment was entered, the sentence should be vacated and the matter remanded for "entry of a new sentencing judgment." *See Crumbley*, 135 N.C. App. at 66-67, 519 S.E.2d at 99.

In the present case, although the written judgment imposed a sentence of nine months of intensive probation on Defendant, the transcript is void of any reference to this sentence. The State argues "[t]here were no discrepancies between what occurred in open court and the sentence that was entered. The only discrepancy is between

what was said in open court and the transcription of those statements." The State argues that the jury notes taken by the clerk who attended the trial demonstrate that the sentence of nine months' probation was announced in open court. The jury notes contain the following notation: "9 mths Intensive." However, because the transcript contains no reference to this sentence, and Defendant was not present at the time the written judgment was entered, we must vacate the sentence of nine months' intensive probation and remand. In the event the trial court does not order a new trial for Defendant after conducting the evidentiary hearing required by Section I of this opinion, the trial court should enter a new sentencing judgment.

Remanded in part; and vacated and remanded in part.

Judges WYNN and McCULLOUGH concur.