IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-655

Filed 6 May 2026

Guilford County, No. 23CR026218-400

STATE OF NORTH CAROLINA

v.

DEONTRE ANTWUN HORNE

Appeal by defendant from judgments entered 13 September 2024 by Judge Stephanie L. Reese in Guilford County Superior Court. Heard in the Court of Appeals 24 March 2026.

*Attorney General Jeff Jackson, by Special Deputy Attorney General Daniel P. O'Brien and Assistant Attorney General Adrian W. Dellinger, for the State.*

*Michelle Abbott, for the defendant-appellant.*

TYSON, Judge.

Deontre Antwun Horne ("Defendant") appeals from judgments entered 13 September 2024. We arrest judgment on one count of discharging a firearm into an occupied vehicle in operation inflicting serious bodily injury and vacate the remaining judgments and remand for the entry of a new sentencing judgment(s).

## I. Background

Defendant and his friend, Jeremiah Williamson, were sitting at a stoplight in Williamson's Honda Accord vehicle on South Main Street in High Point on 23 May

2022.  While preparing to turn, Defendant and Williamson noticed a black SUV, driven by Aimee McRae, in the left-hand turn lane back up, change lanes, and enter into the lane behind them.  In doing so, McRae's SUV struck the rear of Williamson's car, forcing it forward and into the back of another vehicle. Defendant stated his seatbelt jammed and his chest hit the dashboard from the force of the impact.  McRae described the accident as a fender-bender.

After the collision, Williamson, who testified to being shot previously, sped away from the accident before turning into the parking lot of a nearby Kagan Furniture store.  Williamson stated fear motivated his flight from the accident. Coming to a stop in the parking lot, Williamson and Defendant got out of the car to inspect the damage to the vehicle.  McRae, intending to check on the two men and to exchange insurance information, entered the parking lot shortly thereafter.  At that point, both men saw McRae's black SUV driving towards them in the parking lot.

Defendant and Williamson testified the SUV appeared to be accelerating, as it approached them "at a high rate of speed," and neither could see who the driver was inside through its tinted windows.  Fearing for their safety, both men drew their handguns and opened fire on the SUV, striking the driver's side door and window. The State's evidence tended to show Williamson fired once at the SUV, and Defendant fired seven times.  After the SUV stopped, Defendant and Williamson ran to a nearby Sonic restaurant where Williamson called 911 and waited for police officers to arrive.

McRae was hit and injured several times in the stomach, leg, and arm. After her vehicle came to a stop against a light pole, she exited the vehicle and ran to the Sonic restaurant where Williamson and Defendant were located. McRae received emergency first aid from responding officers before being transported to the hospital. She underwent several surgeries to remove bullets and treat her injuries, and spent a month in the hospital recovering from the shooting. Officer Matthew Lopes testified to observing four gunshot wounds and McRae was bleeding profusely at the Sonic restaurant. McRae testified to being shot "maybe seven" times: "I think it was twice in my leg. . . . Three times in my stomach, two in my arm, or something like that."

While Officer Lopes treated McRae, Officer Adam Greeman saw Defendant and Williamson nearby, who both came over to speak with him. Both men had put their weapons in their waistbands and approached Officer Greeman with their hands raised. Both men also volunteered their weapons to Officer Greeman and described the series of events to him from their perspective. Defendant and Williamson fully cooperated with the responding officers, and neither were handcuffed when they were transported to the police department to be interviewed by detectives.

Defendant and Williamson were arrested and charged with discharging a firearm into an occupied vehicle in operation and inflicting serious bodily injury in violation of N.C. Gen. Stat. § 14-34.1(c)(2025). Defendant was apparently also charged with one count of attempted first-degree murder in violation of N.C. Gen. Stat. § 14-17(a)(2025), although an indictment for the attempted murder charge is

- 3 -

not included in the record before us. The trial court declared a mistrial concerning that charge due to the jury's failure to reach a unanimous verdict, and the State voluntarily dismissed the charge.

At trial, Defendant moved for the trial court to dismiss all charges at the close of the State's evidence for insufficiency of the evidence and renewed the motion at the close of all evidence. The motions were denied. On 13 September 2024, the jury convicted Defendant of eight counts of discharging a firearm into an occupied vehicle in operation inflicting serious bodily injury. The trial court's oral judgment, announced in open court was rendered as follows:

> We are going to consolidate the charges into the first three counts. Those are all Class C felonies. The defendant is a Record Level 1. I'm going to take into account what Ms. McRae said in doing the sentencing. Each sentence is going to be for the same. They are all going to be consecutive sentences.
>
> I sentence the defendant to 58 months minimum, 82 months maximum. The defendant is to be given the time he has already served on each of these charges. I'll recommend that the defendant receive any available vocational training that is available for him. I'll also recommend, Mr. Horne, that you get a psych (sic) evaluation when you're down at the DAC.
>
> This is a lot. . . You're going to be—again, I know you're 21, but you're going to have so much life left when you get back out. And I want you to try to make that life as productive and positive for you as you possibly can, all right?

The same day, the trial court signed six written judgments: one consolidating three discharging a firearm offenses, labeled Offenses 51, 52, and 53, and five more

judgments for one offense each, labeled Offenses 54 through 58. Each of the six judgments indicates an active term of 58 to 82 months imprisonment to run consecutively. The result is six consecutive sentences of 58 to 82 months. Defendant gave oral notice of appeal in open court.

## II.    Jurisdiction

Defendant appeals the final judgements imposed following a verdict of guilty by the jury. This appeal is properly before us pursuant to N.C. Gen. Stat. §§ 7A-27(b) and 15A-1444(a) (2025).

## III.    Issues

Defendant contends the trial court erred by entering written judgments apparently in conflict with oral sentences imposed in his presence at trial. Defendant alternatively argues: (1) the judgments contain clerical errors, which fail to accurately reflect the sentences pronounced in open court; or, (2) the written judgments constitute a materially different sentence imposed outside of Defendant's presence in violation of his constitutional and statutory rights.

Defendant also contends the trial court erred in denying his motion to dismiss two of the eight counts of discharging a firearm into an occupied vehicle in operation inflicting serious bodily injury. He argues the State failed to present sufficient evidence tending to show either of those two shots had caused serious bodily injury.

## IV.    Judgments

### A. Standard of Review

We review clerical errors *de novo. See State v. Hauser*, 271 N.C. App. 496, 503, 844 S.E.2d 319, 325 (2020) (citation omitted). Under *de novo* review, this Court "considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (citation and internal quotation marks omitted). We also review whether a defendant was improperly sentenced outside of their presence *de novo. State v. Arrington*, 215 N.C. App. 161, 166, 714 S.E.2d 777, 781 (2011). "In every criminal prosecution it is the right of the accused to be present throughout the trial, unless he waives the right." *State v. Pope*, 257 N.C. 326, 330, 126 S.E.2d 126, 129 (1962) (citation omitted).

## B. Discrepancies in Judgment

"A clerical error is defined as an error resulting from a minor mistake or inadvertence, espe[cially] in writing or copying something from the record, and not from judicial reasoning or determination." *State v. Jarman*, 140 N.C. App. 198, 202, 535 S.E.2d 875, 878 (2000). "When, on appeal, a clerical error is discovered in the trial court's judgment or order, it is appropriate to remand the case to the trial court for correction because of the importance that the record speak the truth." *State v. Smith*, 188 N.C. App. 842, 845 (2008) (citation and quotation marks omitted).

In reviewing the transcript, two apparent understandings of the oral ruling appear: (1) the trial court intended to sentence Defendant to three consecutive sentences of 58 to 82 months imprisonment; or, (2) the trial court intended to sentence Defendant to 58 to 82 months imprisonment in total. These readings would result in

either 178 to 246 months imprisonment or 58 to 82 months imprisonment respectively. The former appears to be the more likely, however, the signed written judgments issued total 348 to 492 months imprisonment—doubling the term of imprisonment. Consequently, the written judgments do nothing to resolve the ambiguity of the oral pronouncement. This large discrepancy cannot be reviewed as a "minor" clerical error.

We must decide whether the trial court violated Defendant's right to be present during sentencing by entering written judgments imposing significantly longer prison term than what the trial court had announced in his presence.

The judgment announced in open court is "the rendering of judgment" while the actual sentence imposed on a criminal defendant is a result of the written judgment entered by the trial court. *State v. Mims*, 180 N.C. App. 403, 413, 637 S.E.2d 244, 250 (2006) (citation omitted). "Where the written judgment represents a substantive change from the sentence pronounced by the trial court, and the defendant was not present at the time the written judgment was entered, the sentence should be vacated and the matter remanded for entry of a new sentencing judgment." *Id.* at 413, 637 S.E.2d at 250 (quotations omitted).

In *State v. Leaks*, this Court held a change of three months between the oral pronouncement and the written judgment done outside the presence of the defendant was sufficient to vacate and remand the matter for entry of a new sentencing judgment. *State v. Leaks*, 240 N.C. App. 573, 578, 771 S.E.2d 795, 799 (2015). There,

the defendant was sentenced to a minimum of 114 and maximum of 146 months imprisonment. *Id.* at 578, 771 S.E.2d at 799. The trial court then entered a written judgment for 114 to 149 months outside of the presence of the defendant. *Id.*

Here, there is a significantly larger difference between the written judgment and the judgment announced in open court than was ordered in *Leaks*, and there is no evidence in the record Defendant was present when the trial court entered its written judgments. Accordingly, the sentence is vacated and this matter is remanded for the entry of a new sentencing judgment.

We are unconvinced by the State's argument the trial court's sentencing intention was clear: the first three convictions were to be consolidated to run consecutively to the next five for identical terms of imprisonment. After a careful reading, we cannot find where in the phrase, "[w]e are going to consolidate *the* charges into the first three counts," (emphasis supplied), supports the notion only three charges would be consolidated appears. Considering the two potential readings discussed above, the trial court's intention, while not altogether clear, certainly does not appear to take the form the State presents, except in the written judgments.

No evidence tends to show Defendant was present when the trial court entered its written judgments. Because the written judgments reflect a wholly different sentence than what was imposed in Defendant's presence during sentencing, Defendant's sentencing judgments are vacated and remanded for the entry of a new sentencing judgment. *See Mims*, 180 N.C. App at 413, 637 S.E.2d at 250.

## V. Defendant's Motion to Dismiss

Defendant argues that the State failed to offer sufficient evidence to support two of the eight counts of discharging a firearm into an occupied vehicle in operation inflicting serious bodily injury.

### A. Standard of Review

Where the defendant makes a general motion to dismiss for insufficient evidence, the motion "preserves all sufficiency of the evidence issues for appellate review." *State v. Golder*, 374 N.C. 238, 245, 839 S.E.2d 782, 787 (2020). Here, Defendant moved to dismiss all charges at the close of all evidence, thereby preserving the issue on appeal.

"We review the denial of a motion to dismiss for insufficient evidence de novo." *State v. Ingram*, 283 N.C. App. 85, 87, 872 S.E.2d 148, 150 (2022) (citation omitted). Whether the State presented substantial evidence of each essential element of the crimes for which Defendant was charged is a question of law. *See State v. Chekanow*, 370 N.C. 488, 492, 809 S.E.2d 546, 550 (2018). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ingram*, 283 N.C. App. at 88, 872 S.E.2d at 150 (quoting *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980)). We view all evidence "in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994 (citation omitted). "Contradictions and discrepancies do not

warrant dismissal of the case; rather, they are for the jury to resolve. Defendant's evidence, unless favorable to the State, is not to be taken into consideration." *State v. Agustin*, 229 N.C. App. 240, 242, 747 S.E.2d 316, 318 (2013) (citation and quotation marks omitted).

**B. N.C. Gen. Stat. § 14-31(c)**

A violation of N.C. Gen. Stat. § 14-31(c)(2025) occurs when a person: (1) willfully or wantonly; (2) discharges a firearm; (3) into an occupied vehicle; (4) while it is in operation; and, (5) causes serious bodily injury. Each shot fired from a pistol may be charged as a separate violation, as "[e]ach shot . . . required that defendant employ his thought processes each time he fired the weapon." *State v. Kirkwood*, 229 N.C. App. 656, 667, 747 S.E.2d 730, 738 (2013) (quoting *State v. Rambert*, 341 N.C. 173, 176-77, 459 S.E.2d 510, 513 (1995)).

The State presented evidence tending to show eight bullet holes in the victim's car. This would be sufficient to sustain the eight charges under *Kirkwood* and the theory of liability of multiple offenders acting in concert. However, McRae testified to having been shot "maybe seven" times, and described where she was shot: "I think it was twice in my leg. . . . Three times in my stomach, two in my arm, or something like that." Officer Lopes testified to personally observing four gunshot wounds: one to the left arm, one to the left leg, and two to the stomach.

Beyond detailing the first aid provided by responding officers and McRae's testimony about the procedures she went through, the State did not offer any other

evidence tending to show the number of wounds McRae had suffered. The State highlights the inconclusiveness of its own evidence in its brief. Because the State charged each offense as a violation of N.C. Gen. Stat. § 14-34.1(c) specifically, the State was required to prove as an essential element McRae had suffered serious bodily injury for *each* asserted violation. N.C. Gen. Stat. § 14-34 (2025).

Given that we resolve discrepancies in the State's favor in reviewing a motion to dismiss, at most we can resolve the discrepancy between McRae's testimony and Officer Lopes' testimony as providing sufficient evidence to support seven instances of serious bodily injury. No testimony substantiating any other injuries to McRae, and no evidence was presented tending to show two bullets might have wounded her in the same place, no reasonable inference can be drawn to support an eighth instance of serious bodily injury. We arrest judgment on one of Defendant's convictions for discharging a firearm into an occupied vehicle inflicting serious bodily injury and remand for resentencing and remand.

## VI.   Conclusion

The trial court erred in denying Defendant's motion to dismiss and vacate and dismiss one of Defendant's convictions. The sentencing judgments are vacated and remanded for entry of a new sentencing judgment consistent with this opinion. *It is so ordered.*

ONE JUDGMENT ARRESTED AND REMAINING JUDGMENTS VACATED AND REMANDED FOR RESENTENCING.

Judges COLLINS and FREEMAN concur.