STATE OF NORTH CAROLINA v. MARTIN ALVA CRAWFORD Defendant

No. COA03-485

(Filed 2 March 2004)

**1. Evidence— homicide victim's character—not in issue— defense of accident**

Testimony that a murder victim had shot her former husband was properly excluded. Defendant had raised the defense of accident, and the character of the victim was not in issue.

**2. Criminal Law— prosecutor's remark about defense witness—not prejudicial**

There was no prejudicial error in a second-degree murder prosecution where the prosecutor made a derogatory remark about defendant's firearms expert while objecting to his testimony. This was one brief statement at the end of an objection from the State which was overruled, there were no impermissible questions or arguments, and there was sufficient evidence that the shooting was not an accident, as defendant was contending.

**3. Jury— taking notes—allowed—no abuse of discretion**

The trial court did not abuse its discretion in a second-degree murder prosecution by allowing the jurors to take notes. N.C.G.S.

§ 15A-1228 no longer requires that the court give a "no notes" instruction on request.

**4. Constitutional Law— effective assistance of counsel—failure to record voir dire—no prejudice**

A second-degree murder defendant was not denied effective assistance of counsel by his attorney's failure to record the jury voir dire where defendant contended on appeal that a motion for a change of venue should have been granted. Jury selection was completed by lunch on the first day without difficulty, media coverage was primarily factual, and defendant did not argue that any of the jurors were biased.

Appeal by defendant from judgment entered 27 September 2002 by Judge Sanford L. Steelman, Jr. in Superior Court, McDowell County. Heard in the Court of Appeals 3 February 2004.

*Attorney General Roy Cooper, by Assistant Attorney General Philip A. Lehman, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Anne M. Gomez, for the defendant-appellant.*

WYNN, Judge.

By this appeal, Defendant Martin Alva Crawford argues the trial court erred by (I) excluding testimony that his wife shot her former husband; (II) overruling his objection to the prosecutor's prejudicial comment concerning Defendant's firearms expert; and (III) failing to instruct the jurors that they may not take notes. Defendant also contends that he was afforded ineffective assistance of counsel in that his attorney failed to have jury selection recorded. After careful review, we find Defendant received a fair trial, free from prejudicial error.

The pertinent facts indicate that on the evening of 8 December 2001, Defendant shot and killed his wife, Jennifer Crawford. Prior to the shooting, Defendant and his wife were arguing outside of their home about Defendant going to visit a friend. During the argument, Defendant's wife raised a baseball bat and smashed out a side window in their vehicle. Immediately thereafter, Defendant shot his wife in the head. After smashing his gun on the ground, Defendant went inside of his home, told his brother that he thought he had just shot his wife, went back outside and sat beside his wife's body. Soon thereafter, the police arrived and arrested Defendant.

Defendant was convicted of second degree murder and received an active term of a minimum of 157 months and a maximum of 198 months. Defendant appeals.

[1] Defendant first contends the trial court erroneously sustained the State's objections to Defendant's testimony that his wife shot her former husband. We disagree.

As part of his defense, Defendant testified that after he and his wife began arguing about his attempt to leave in their vehicle, he went across the street to see his wife's cousin, Carl Beatty, to see if he would intercede. After his wife's cousin declined, Defendant testified that he went into his home to get his .22 rifle in order to hide it from his wife. He testified that two months earlier, his wife had shot out the tires in his car and he attempted to testify that his wife shot her former husband. After the State's objection, Defendant testified, on *voir dire*, that he was thinking about the conversation in which his wife told him of the prior shooting when he retrieved the gun from his home. He wanted to hide the gun in order to prevent her from getting it.

Defendant testified that after he came out of the house, he went to his car, heard the window break and saw his wife approaching him with the bat. He testified that he crouched down and protected his head with the rifle and that as he did this, the gun went off and his wife fell backwards. Thus, Defendant contended the shooting was accidental and therefore he was not guilty of murder.

On appeal, Defendant contends that his testimony regarding his wife's prior shooting of her former husband would have explained why he went into the home to get the .22 rifle during the argument. He argues that "if he had been able to present the evidence of his actual state of mind in removing the rifle from the house, the jury would have been much more likely to find that the shooting was an accident, was due to criminal negligence, or was done in the heat of passion." However, in *State v. Goodson*, we held that "evidence of the victim's violent character is irrelevant in a homicide case when the defense of accident is raised. The character of the deceased in such a case is not at issue." 341 N.C. 619, 623, 461 S.E.2d 740, 742 (1995) (citing *State v. Winfrey*, 298 N.C. 260, 258 S.E.2d 346 (1979)). "The defense of accident, in effect, says that the homicide did not result from any volitional act on [the defendant's] part. Thus, there could be no relevancy in evidence tending to show that [the defendant] acted reasonably. The only issue before the jury was whether [the rifle] discharged acci-

dentally, and, therefore, evidence of the victim's character traits could shed no light on whether the [rifle] accidentally discharged and inflicted the fatal wounds." *State v. Winfrey*, 298 N.C. 260, 263, 258 S.E.2d 346, 348 (1979). Accordingly, we conclude the trial court did not erroneously sustain the State's objection.

**[2]** Defendant next argues the trial court erroneously overruled his objection to the prosecutor's prejudicial comment concerning his expert witness on firearms. Michael Mercer, a gunsmith and firearms manufacturer, was accepted as an expert in gunsmithing and firearms by the trial court and testified for the defense. During his direct testimony, he testified that if a person holds a Marlin .22 caliber rifle with his hand around the trigger mechanism, but outside the trigger guard, the person could fire the gun accidentally if one of his fingers touched the trigger. During redirect examination, the following occurred:

Q: . . . [D]oes the size of [defendant's] hand make any difference in regards to your opinion of the possibility of another of his fingers causing this trigger to pull?

A. Yes. When I saw the size of the defendant's hand I immediately thought—an individual with that amount of flesh and muscle on his hand—if your hand is manipulated, rolled around the trigger guard—

MR. WALKER: Well, I object. He's giving an opinion far outside his field of expertise if he has any.

THE COURT: Overruled.

MS. TAYLOR: I object and ask to strike the commentary.

THE COURT: Proceed. I've made a ruling. I overruled his objection. Now let's proceed.

Relying upon *State v. Sanderson*, 336 N.C. 1, 442 S.E.2d 33 (1994) and *State v. Rogers*, 355 N.C. 420, 562 S.E.2d 859 (2002), Defendant contends the words "if he has any" stated at the end of the prosecutor's objection was impermissible and prejudiced his defense to the extent that a new trial is warranted. We disagree.

In *State v. Rogers*, after detailing numerous improper cross-examination questions and comments during closing argument regarding a psychiatrist's testimony during a capital sentencing proceeding, our Supreme Court stated:

In the case at bar, the prosecutor went beyond ascribing the basest of motives to defendant's expert. As detailed above, he also indulged in *ad hominem* attacks, disparaged the witness' area of expertise, and distorted the expert's testimony. We have observed that maligning the expert's profession rather than arguing the law, the evidence, and its inferences is not the proper function of closing argument. When vigor in unearthing bias becomes personal insult, all bounds of civility, if not of propriety, have been exceeded.

*Rogers*, 355 N.C. at 464, 562 S.E.2d at 886. Based upon its analysis of the record and transcript, our Supreme Court in *Rogers* was unable to conclude that defendant was not unfairly prejudiced by the prosecutor's misconduct and therefore ordered a new capital sentencing proceeding. *Id.* at 465, 886.

In the subject case which is non-capital, even assuming the prosecutor's statement was impermissible, we are unable to conclude Defendant was prejudiced by the statement. First, the prosecutor made one brief statement at the end of an objection that was overruled by the trial court unlike the numerous unfettered questions and comments in *Rogers*. Second, there is no indication the prosecutor made any impermissible statements during closing argument regarding the expert's testimony or asked any impermissible questions during his cross-examination of the expert. Finally, there was sufficient evidence presented by the State indicating Defendant's shooting of his wife was not an accident. Indeed, the State presented the eyewitness testimony of Bill Whiteside, which consisted of hearing Defendant's threat to his wife that he would shoot her if she smashed the car window and a description of how Defendant raised his arm, turned his hand over and fired the gun at his wife after she smashed the car window. Accordingly, we conclude Defendant was not prejudiced by the prosecutor's brief comment.

[3] In his third issue, Defendant argues the trial court erroneously failed to instruct the jurors that they could not take notes during closing arguments. We disagree.

N.C. Gen. Stat. § 15A-1228 (2001) states:

Except where the judge, on the judge's own motion or the motion of any party, directs otherwise, jurors may make notes and take them into the jury room during their deliberations.

At the beginning of the trial in this case, the trial court instructed the jurors that they could take notes without objection from either party. However, prior to closing argument, both parties indicated they would prefer the jurors not take notes because they wanted the jurors focused on the argument and exhibits. The trial court overruled the parties' request and allowed the jurors to take notes.

By referencing a prior version of N.C. Gen. Stat. § 15A-1228, Defendant argues that the trial court must instruct the jurors they cannot take notes upon the request of either party. However, under the current version of N.C. Gen. Stat. § 15A-1228, whether the jurors are allowed to take notes is within the trial court's discretion. *See State v. Rhodes*, 290 N.C. 16, 23, 224 S.E.2d 631, 635 (1976) (stating "the presiding judge is given large discretionary power as to the conduct of a trial. Generally, in the absence of controlling statutory provisions or established rules, all matters relating to the orderly conduct of the trial or which involve the proper administration of justice in the court, are within his discretion"). As N.C. Gen. Stat. § 15A-1228 no longer contains the mandatory requirement that the trial court instruct jurors not to take notes upon the motion of either party, we conclude whether jurors are allowed to take notes is a discretionary decision made by the trial court. After careful review, we conclude the trial court did not abuse its discretion.

[4] In his final argument, Defendant contends he was afforded ineffective assistance of counsel when his attorney failed to have jury selection recorded. We disagree.

Prior to trial, Defendant moved for a change of venue because:

The deceased, Jennifer Crawford, is a long time resident of McDowell County and has extensive family in the county which includes the following potential witnesses at trial: Wynn Jackson, her uncle and a well known business and political figure in McDowell County owning and operating a landscaping business with clients throughout McDowell County; Olin Jackson, her uncle; Guy Jackson, her uncle, her and the Defendant's landlord at the time of the incident, as well as landlord for all tenants on the road where the incident occurred; Alphonso Terrell Hardy and Demethria Garshelle Hardy, her cousin and his wife who live across the street from her and the Defendant; and approximately a dozen more witnesses that gave statements mainly based on rumor and hearsay. . . .

Defendant also referenced a local newspaper, television, and radio reports that contained incorrect and highly inflammatory statements relating to Defendant and his wife's relationship and he stated that because McDowell County was a small, close-knit community, it was likely the incorrect and inflammatory statements had been circulated as rumors throughout the community. The trial court denied Defendant's motion and jury selection was not recorded.

Defendant argues he was afforded ineffective assistance of counsel because the trial attorney's failure to have jury selection recorded rendered Defendant's attempt to have the denial of his change of venue motion reviewed on appeal, futile. As stated by our Supreme Court in *State v. Madric*, 328 N.C. 223, 228, 400 N.C. 31, 34 (1991):

> The best and most reliable evidence as to whether existing community prejudice will prevent a fair trial can be drawn from prospective jurors; responses to questions during the jury selection process. If an impartial jury actually cannot be selected, that fact should become evident at the *voir dire*.

Thus, Defendant argues the trial attorney's failure to request a recording of jury *voir dire* is akin to a complete denial of counsel, such as when a trial attorney fails to give notice of appeal. *See Roe v. Flores-Ortega*, 528 U.S. 470, 145 L. Ed. 2d 985 (2000). We disagree.

"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland v. Washington*, 466 U.S. 668, 689, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984).

Even assuming counsel's performance was deficient, Defendant cannot establish he was deprived of a fair trial. First, there is no indication in the record that there were any difficulties in selecting a jury. Jury selection was completed before the lunch recess on the first day of a four-day trial. Moreover, "standing alone, evidence of pretrial publicity does not establish a reasonable likelihood that a fair trial

cannot be had. [Our Supreme Court] has consistently held that factual news accounts regarding the commission of a crime and the pretrial proceedings do not of themselves warrant a change of venue." *State v. Soyars*, 332 N.C. 47, 53, 418 S.E.2d 480, 484 (1992). Having reviewed the news articles submitted by Defendant as exhibits to his motion for a change of venue, we conclude these articles were primarily factual in nature and did not contain any inflammatory comments. Indeed, the articles indicate the date and time of the incident; Mrs. Crawford was shot with a .22 caliber rifle; Defendant was charged with first-degree murder; the parties had been arguing and Mrs. Crawford hit the vehicle with a baseball bat; the police had on previous occasions had been to the Crawford home for noise complaints and allegations that tires had been shot out; and neither party had a criminal record.

Finally, "the burden remains on defendant to show that it was reasonably likely that the jurors would base their decisions on pretrial information rather than on the evidence presented at trial. Where, as here, a jury has been selected to try the defendant and the defendant has been tried, the defendant must prove the existence of an opinion in the mind of a *juror who heard his case* that will raise a presumption of partiality." *See Soyars*, 332 N.C. at 54, 418 S.E.2d at 484. Defendant has not argued any jurors were partial in this case. Accordingly, we conclude Defendant was not afforded ineffective assistance of counsel.

No error.

Judges McGEE and TYSON concur.