STATE OF NORTH CAROLINA v. JAMES EARL THOMAS

No. COA07-60

(Filed 6 November 2007)

## 1. Constitutional Law— right to representation free from conflict—denial of counsel's motion to withdraw

The trial court did not err in a first-degree rape case by denying defense counsel's motion to withdraw, because: (1) although defense counsel had represented a State's witness three years prior to defendant's trial and was no longer representing him, there was no concurrent conflict of interest; (2) defense counsel had no recollection of the specifics of the witness's case aside from the bare fact that the witness had been convicted on assault charges; and (3) the transcript revealed that defense counsel made significant inroads to undermine the witness's credibility.

## 2. Rape— first-degree rape—failure to instruct on lesser-included charge of attempted first-degree rape—penetration

The trial court did not commit plain error in a first-degree rape case by failing to instruct, upon its own motion, on the lesser-included charge of attempted first-degree rape, because: (1) although defendant presented evidence that the victim's genitals showed no evidence of trauma, an expert witness also testified that lack of trauma does not indicate lack of penetration and the entering of the vulva or labia is sufficient for penetration; (2) instructions on the lesser-included offenses of first-degree rape are warranted only when there is some doubt or conflict concerning the crucial element of penetration, and merely presenting evidence that no trauma occurred to the victim was not sufficient to establish a conflict of evidence as to penetration; and (3) although defendant relies on the victim's testimony that "defendant tried to make me have sex with [him]" as evidence permitting

a jury to draw a conflicting inference as to penetration, the testimony did not create doubt as to whether penetration actually occurred and was in fact consistent with penetration occurring.

### 3. Constitutional Law— effective assistance of counsel—failure to show prejudice from lack of request for recording— exclusions from mandatory recording

Defendant did not receive ineffective assistance of counsel in a first-degree rape case based on defense counsel's failure to request recordation of opening/closing arguments, jury selection, and rulings from the trial court on matters of law, because: (1) defendant acknowledges he cannot show prejudice as to this issue and has made the argument for preservation purposes only; (2) no request for these recordings, that are excluded from mandatory recording, was made as required by N.C.G.S. § 15A-1241(b); (3) our Supreme Court has held that a defendant cannot establish ineffective assistance of counsel for failure to request recordation of the jury selection and bench conferences where no specific allegations of error were made and no attempts were made to reconstruct the transcript; and (4) the Court of Appeals has held that a defendant cannot establish prejudice as a result of defense counsel's failure to request recordation of those items specifically exempted from the recording statute.

Appeal by defendant from judgment entered 30 August 2006 by Judge James F. Ammons, Jr. in Harnett County Superior Court. Heard in the Court of Appeals 11 September 2007.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Chris Z. Sinha, for the State.*

*M. Alexander Charns for defendant-appellant.*

HUNTER, Judge.

James Earl Thomas ("defendant") appeals from a judgment entered 30 August 2006 pursuant to a jury verdict finding him guilty of first degree rape in violation of N.C. Gen. Stat. § 14-27.2(a)(1) (2005). Defendant was sentenced to a minimum of 384 months' and a maximum of 470 months' imprisonment. After careful consideration, we find that defendant's trial was free from error.

The State presented evidence that tended to show that the victim, referred to as "BH" in this opinion, was spending the night at a

friend's house. BH was sleeping on the floor next to her friend, TD, when defendant, who is TD's stepfather, entered the room. BH testified that after defendant entered the room, he dragged her to the door, took off her clothes, and "put his stuff into" hers. BH told defendant to stop. The only other person in the house was TD, and BH called to her, but TD did not wake up. After defendant left, BH testified that she was bleeding from her vagina.

Approximately one month later, BH told her mother about the incident. Her mother called the police. Deputy S.M. Currin testified that BH told him that defendant "tried to make me have sex with [him]." He also stated that BH told him that defendant "was having sex with me when I didn't want to."

Dr. Vivian D. Everett examined BH and found nothing during that physical examination that would indicate that BH had been sexually abused. Dr. Everett also testified that, based on her examination of BH, a single act of intercourse could have occurred.

Defendant's expert, Dr. Christopher Chao, had reviewed BH's medical records and testified that there was no evidence of trauma or injury to BH's genitals. Dr. Chao testified that if the trauma had occurred two months earlier, there would be no evidence of that trauma, and lack of trauma did not indicate lack of penetration.

Vincent Harris ("Harris" or "witness Harris") also testified at trial. Three years before the trial, defendant's counsel had represented Harris in an unrelated matter. At the time of the trial, Harris was in jail on a charge of breaking and entering and had been indicted as an habitual felon. According to Harris, defendant told him that he had dragged BH out of the bedroom, pulled her pants down, and had sex with her. Harris also said that defendant admitted to there being blood on the floor where the incident occurred and that defendant cleaned up afterward. Defendant did not testify.

Defendant presents the following issues for this Court's review: (1) whether the trial court erred in denying defense counsel's motion to withdraw; (2) whether the trial court committed plain error by not instructing the jury on the lesser charge of attempted first degree rape; and (3) whether defendant's trial counsel was inadequate by not making certain requests, thereby depriving defendant of a full and adequate appeal of trial errors.

STATE v. THOMAS

[187 N.C. App. 140 (2007)]

I.

**[1]** Defendant's trial attorney filed a motion to withdraw as counsel because the State intended to call as a witness against defendant one of the attorney's former clients, Harris. The attorney had represented Harris three years earlier in an unrelated matter. The trial court conducted an inquiry and made a ruling to deny this motion. Thus, defendant's argument that the denial of his counsel's motion to withdraw was made without a hearing is rejected. Defendant also argues that the ruling denied his right to counsel. We disagree.

"An accused's right to counsel in a criminal prosecution is guaranteed by the Sixth Amendment of the United States Constitution and is applicable to the states through the Fourteenth Amendment, Sections 19 and 23 of the North Carolina Constitution." *State v. Shores*, 102 N.C. App. 473, 474, 402 S.E.2d 162, 163 (1991). It thus follows that defendants in criminal cases have "a constitutional right to effective assistance of counsel." *State v. Bruton*, 344 N.C. 381, 391, 474 S.E.2d 336, 343 (1996) (citing *Strickland v. Washington*, 466 U.S. 668, 686, 80 L. Ed. 2d 674, 692 (1984); *State v. Braswell*, 312 N.C. 553, 561, 324 S.E.2d 241, 247 (1985)). Included within that right is the " 'right to representation that is free from conflicts of interest.' " *Id.* (quoting *Wood v. Georgia*, 450 U.S. 261, 271, 67 L. Ed. 2d 220, 230 (1981)).

When, as in this case, a trial court is made aware of a potential conflict of interest, it must hold a hearing " ' "to determine whether there exists such a conflict of interest that the defendant will be prevented from receiving advice and assistance sufficient to afford him the quality of representation guaranteed by the [S]ixth Amendment." ' " *State v. Mims*, 180 N.C. App. 403, 409, 637 S.E.2d 244, 248 (2006) (citations omitted in original) (failure to hold a hearing after being made aware of it is reversible error). Here, the trial court held such a hearing. While hearings are required, "[t]he trial court must be given substantial latitude in granting or denying a motion for attorney disqualification." *Shores*, 102 N.C. App. at 475, 402 S.E.2d at 163.

In the instant case, we hold that defendant was not prevented from receiving the quality of representation guaranteed by the Sixth Amendment. Here, there was no concurrent conflict of interest. Defense counsel had represented witness Harris three years prior to defendant's trial and was no longer representing him. *See* Rev. R. Prof. Conduct N.C. St. B. 1.7(a), 2007 Ann. R. N.C. 746 (stating that "a

lawyer shall not represent a client if the representation involves a concurrent conflict of interest") (cited with approval by *Mims*, 180 N.C. App. at 411, 637 S.E.2d at 249). Moreover, defense counsel had no recollection as to specifics of witness Harris's case aside from the bare fact that witness Harris had been convicted on assault charges. Indeed, defense counsel told the trial court that she would review witness Harris's file, which she had in her office, to see if she could use any information in that file to help her current client.[1] That statement establishes that defense counsel was committed to her current client's case and would not hesitate to use any information at her disposal to aid defendant.

Although defense counsel's cross-examination as to witness Harris's past convictions may not have been as robust as it could have been,[2] the transcript reveals that defense counsel did make significant inroads to undermine witness Harris's credibility. She asked him about the fight defendant had with witness Harris in jail, in which witness Harris was knocked unconscious; how after that incident, witness Harris decided to cooperate with the police; and about what witness Harris expected to receive in terms of a deal on his own pending felony charges for informing on defendant. Accordingly, we hold that defendant's Sixth Amendment rights under the United States Constitution and his rights under Sections 19 and 23 of the North Carolina Constitution were not violated. Defendant's assignments of error as to this issue are rejected.

## II.

[2] Defendant next argues that the trial erred by not instructing the jury, upon its own motion, on attempted first degree rape. We disagree.

"Instructions on the lesser included offenses of first degree rape are warranted only when there is some doubt or conflict concerning the crucial element of penetration." *State v. Wright*, 304 N.C. 349, 353,

---

1. As stated earlier, the trial court barred defense counsel from reviewing those files.

2. When defense counsel asked about witness Harris's prior criminal record, the following exchange took place:

    A  I have not the slightest idea.

    Q  It's a lot, isn't it?

    A  It occurred much.

    [Defense Attorney]:  Your Honor, that's all.

283 S.E.2d 502, 505 (1981). In *Wright,* our Supreme Court held that where there was only conflict as to how the penetration occurred (whether defendant inserted his penis or whether the victim assisted him), an instruction on attempted rape was not warranted. *Id.* at 355, 283 S.E.2d at 505-06. Similarly, in *State v. Davis,* 291 N.C. 1, 229 S.E.2d 285 (1976), our Supreme Court held that submitting the charge of second degree attempted rape would have been inappropriate because all the evidence in that case tended "to show a completed act of intercourse and the only issue [was] whether the act was with the prosecuting witness's consent or by force and against her will[.]" *Id.* at 13, 229 S.E.2d at 293.

Instructions on attempted rape have been required where there is conflicting evidence as to penetration or when, from the evidence presented, the jury may draw conflicting inferences. *State v. Johnson,* 317 N.C. 417, 436, 347 S.E.2d 7, 18 (1986), *superseded by statute as stated in, State v. Moore,* 335 N.C. 567, 440 S.E.2d 797 (1994). In *Johnson,* the victim testified that penetration had occurred. *Id.* On cross-examination, however, the victim "testified that on the morning she was raped, she gave to the police a written statement in which she said, regarding the assailant's first attack, that the man 'tried to push it in but couldn't' and that '[h]e tried for maybe fifteen seconds.' " *Id.* As to the second attack, the victim told the police that " 'he tried to penetrate me again' and '[h]e told me to put it in, and I said "I have." He tried to get it in but couldn't.' " *Id.*

In addition to that testimony, her treating physician testified that the victim had told him that "she 'felt pressure but not penetration' and she was uncertain whether there had been penetration or not." *Id.* Our Supreme Court held that "[t]his evidence creates a conflict as to whether penetration occurred which should have been resolved by the jury under appropriate instructions [on attempt]." *Id.* The error was reversible because, according to the *Johnson* Court, the fact that "the jury convicted defendant of first degree rape which required it to find penetration does not render the error harmless." *Id.* at 436-37, 347 S.E.2d at 18-19.

In the instant case, defendant relies on BH's testimony that "[defendant] tried to make me have sex with [him,]" as evidence permitting a jury to draw a conflicting inference as to penetration. Defendant also relies on the lack of medical evidence of penetration in making this argument. We disagree that this evidence created a conflict that would necessitate an instruction on first degree attempted rape.

The crucial element in establishing first degree rape is that there was some penetration. *Wright*, 304 N.C. at 353, 283 S.E.2d at 505. Although defendant presented evidence that BH's genitals showed no evidence of trauma, the expert witness also testified that lack of trauma does not indicate lack of penetration. Moreover, penetration does not require " 'that the vagina be entered or that the hymen be ruptured. The entering of the vulva or labia is sufficient.' " *State v. Fletcher*, 322 N.C. 415, 424, 368 S.E.2d 633, 638 (1988). The State put on evidence from BH that defendant had inserted his penis into her vagina, which was corroborated by Deputy Currin who confirmed that BH had told him that defendant inserted his penis into her vagina, as well as evidence from Harris, who testified that defendant told him that he had sex with BH. Merely presenting evidence that no trauma occurred to BH is not sufficient to establish a conflict of evidence as to penetration.

We find defendant's additional argument that BH's testimony that defendant "tried to . . . have sex" with her equally unpersuasive. At the outset, this evidence falls far short of the standard set in *Johnson* where the alleged victim told both the police and her doctor that no penetration had occurred. Moreover, the testimony does not create doubt as to whether the penetration actually occurred. The statement is consistent with penetration occurring as, according to BH's testimony, defendant did try to penetrate her and eventually was able to do so. Accordingly, defendant's arguments as to this issue are rejected.

III.

**[3]** Defendant next argues that he received ineffective assistance of counsel because his trial counsel did not request recordation of opening/closing arguments, jury selection, and rulings from the trial court on matters of law. Defendant acknowledges that he cannot show prejudice as to this issue and has made the argument for preservation purposes only.

"To prevail on a claim of ineffective assistance of counsel, a defendant must first show that his counsel's performance was deficient and then that counsel's deficient performance prejudiced his defense." *State v. Allen*, 360 N.C. 297, 316, 626 S.E.2d 271, 286 (2006). Deficient performance may be shown by establishing "that 'counsel's representation "fell below an objective standard of reasonableness." ' " *Id.* (citations omitted). In order " 'to establish prejudice, a "defendant must show that there is a reasonable proba-

bility that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." ' " *Id.* (citations omitted).

N.C. Gen. Stat. § 15A-1241(a) (2005) excludes from mandatory recording: "(1) [s]election of the jury in noncapital cases; (2) [o]pening statements and final arguments of counsel to the jury; and (3) [a]rguments of counsel on questions of law." Under subsection (b) of that statute, all of the above may be recorded upon request of any party. N.C. Gen. Stat. § 15A-1241(b). In the instant case, no such request was made.

In *State v. Hardison*, 326 N.C. 646, 661-62, 392 S.E.2d 364, 373 (1990), our Supreme Court held that a defendant cannot establish ineffective assistance of counsel for failure to request recordation of the jury selection and bench conferences where no specific allegations of error were made and no attempts were made to reconstruct the transcript. Moreover, this Court has held that a defendant·cannot establish prejudice as a result of defense counsel's failure to request recordation of those items specifically exempted from the recording statute. *State v. Price*, 170 N.C. App. 57, 67, 611 S.E.2d 891, 898 (2005). Thus, defendant is unable to establish ineffective assistance of counsel or any prejudice as a result of failure to record. Accordingly, his assignment of error as to this issue is rejected.

## IV.

In summary, we hold that the trial court did not err in denying defense counsel's motion to withdraw. We also find that the trial court did not err when instructing the jury. Finally, defendant cannot establish ineffective assistance of counsel by trial counsel for not requesting recordation of the complete trial proceedings. Defendant's trial was free from error.

No error.

Judges WYNN and JACKSON concur.