STATE OF NORTH CAROLINA
v.
RIGO VERTO GUILLEN-MARTINEZ
No. COA08-213
Court of Appeals of North Carolina
Filed December 2, 2008
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Christopher W. Brooks, for the State.
D. Tucker Charns, for defendant-appellant.
ELMORE, Judge.
On 26 February 2007, defendant Rigo Verto Guillen-Martinez was indicted on charges of second degree murder, hit and run with property damage, and driving while impaired. Additionally, the indictment alleged several aggravating factors. The case was tried at the 17 September 2007 Criminal Session of Rowan County Superior Court.
The State presented evidence at trial which tended to show the following: On 6 February 2007, at approximately 5:00 p.m, Valerie Freeze was driving down Main Street. Freeze, who was driving behind the defendant's red Jeep Cherokee, observed defendant "swerving erratically and speeding up and slowing down." Freeze called 911 and followed defendant's car for several blocks, until he turned onto Airport Road.
At around the same time, Millison Douglas was stopped at the corner of Airport Road and Main Street while on her way to work. Douglas observed a red Jeep Cherokee coming down the road. Douglas stated that the Jeep looked like it was going straight, but turned suddenly and hit the front of her car on the driver's side. Douglas testified that she and defendant looked at each other, and then defendant backed up and drove away. Douglas' friend, Karen Page, was in the car behind her at the intersection. After the accident, Douglas jumped out of her car and told Page "[h]e hit my car." Page responded, "I know, I seen it." Page then told Douglas that she would follow the defendant. Meanwhile, Douglas called 911. While Page followed the defendant, she observed him get into another head-on collision. Again, defendant continued on rather than stop. Page called 911.
Officer D.L. Horne of the Kannapolis Police Department was on routine patrol and responding to another call when he observed a red Jeep Cherokee traveling east on Rosemont Avenue. As he watched, the Jeep "swerved across the center line, across the center of the roadway in our direction." He and the two people he were with moved back from the road, and the Jeep approached and almost slowed to a stop. Officer Horne yelled to the driver for the vehicle to stop, and he reached for the door handle. As he did so, the defendant looked at him, smiled and "sped off." Soon after, Page drove up to Officer Horne and informed him that defendant had struck two other vehicles. Horne ran to his patrol car and chased after the defendant.
Officer Horne pursued defendant and attempted to catch up with him. While following the defendant, he observed as defendant failed to stop for a stop sign. Officer Horne activated his blue lights, and defendant pulled his vehicle into a parking lot. Defendant slowed as if he were stopping, hesitated for a second, then looked at Officer Horne in his driver's side mirror and smiled before he "pulled back off." Officer Horne continued in pursuit. As defendant continued north on Main Street, he crossed the center line twice, causing traffic coming from the opposite direction to move out of his way. According to Officer Horne, defendant was traveling at approximately seventy miles an hour. Defendant finally reached a curve at Highland Avenue, crossed the center line, and struck a white Saturn coming from the opposite direction "almost head-on." After the cars collided, the Jeep drove over the Saturn, flipped over and slid approximately 100 to 150 feet. The accident was recorded on video by a camera attached to Officer Horne's patrol car. Leeanna Newman and her unborn child died from injuries sustained in the accident.
Following the accident, Officer Horne ran to the Jeep and found defendant unconscious. Lawrence Kersey, a senior paramedic with Rowan County Emergency Medical Services responded to the scene and found defendant unconscious with "his leg wrapped around the steering wheel." Kersey testified that there was an odor of alcohol on defendant's breath. Defendant was transported by ambulance to Northeast Medical Center. While in the ambulance, defendant regained consciousness. He mumbled to Kersey that he "lov[ed] America and we were doing great" and "he wanted to get up and go." Kersey asked defendant if he had anything to drink that day, and defendant responded "[q]uanta cerveza[,]" or beer. When asked how many, defendant responded "venti[,]" or twenty. Later analysis of defendant's blood determined that he had a blood alcohol concentration of .27.
Defendant was convicted of second degree murder, hit and run with property damage, and driving while impaired. The trial court sentenced defendant from the aggravated range to a term of 276 to 341 months imprisonment for second degree murder; a consecutive term of 24 months imprisonment for driving while impaired; and a consecutive term of 45 days imprisonment for hit and run with property damage. Defendant appeals.
Defendant first argues that the trial court erred by allowing Officer Eddie Ashworth of the Kannapolis Police Department to testify as an expert in accident reconstruction. Officer Ashworth testified that defendant never applied his brakes prior to crashing into Newman's vehicle, and that he was traveling an estimated seventy-five miles per hour before impact. Officer Ashworth further testified that Newman did not have an opportunity to apply her brakes or avoid the collision. Defendant cites Officer Ashworth's "limited experience and his lack of affiliation with any accrediting organizations" and contends that Officer Ashworth was not properly qualified as an expert in the field of accident reconstruction. We disagree. The determination of whether a witness may be accepted as an expert is within the discretion of the trial court and will not be overturned absent an abuse of discretion. State v. Morgan, 359 N.C. 131, 160, 604 S.E.2d 886, 904 (2004). "An abuse of discretion occurs when a trial judge's ruling is manifestly unsupported by reason." State v. Summers, 177 N.C. App. 691, 697, 629 S.E.2d 902, 907 (internal citations and quotations omitted), disc. review denied, 360 N.C. 653, 637 S.E.2d 192 (2006). Rule 702 of the Rules of Evidence provides,
If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion.
N.C. Gen. Stat. § 8C-1, Rule 702(a)(2007). In order to qualify as an expert, a witness need only be found "better qualified than the jury as to the subject at hand, with the testimony being 'helpful' to the jury." State v. Davis, 106 N.C. App. 596, 601, 418 S.E.2d 263, 267 (1992)(citing State v. Huang, 99 N.C. App. 658, 663, 394 S.E.2d 279, 282, disc. review denied, 327 N.C. 639, 399 S.E.2d 127 (1990)), disc. review denied, 333 N.C. 347, 426 S.E.2d 710 (1993).
In the instant case, a proper foundation was provided for qualifying Officer Ashworth as an expert in accident reconstruction. Officer Ashworth testified that he had been an officer for the Kannapolis Police Department for almost eighteen years, with his primary responsibility being a member of the traffic reconstruction team. Officer Ashworth testified that he had taken eighty (80) hour courses in traffic scene investigation, traffic crash reconstruction, and advanced traffic crash reconstruction. He also had extensive training in the use of laser technology to reconstruct accidents. Finally, Officer Ashworth testified that he had investigated "over a thousand" traffic collisions since joining the police department in 1989. Given his extensive experience and training, the trial court could properly determine in its discretion that Officer Ashworth could assist the jury in understanding the evidence. Accordingly, we conclude the trial court did not abuse its discretion by allowing Officer Ashworth to testify as an expert witness.
Defendant next argues that he received ineffective assistance of counsel because his attorney failed to request recordation of the jury voir dire and closing arguments. Defendant contends that the failure of his trial counsel to request recordation deprived him of full appellate review and effective assistance of appellate counsel. We are not persuaded.
To successfully assert an ineffective assistance of counsel claim, defendant must satisfy a two-prong test.
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
State v. Braswell, 312 N.C. 553, 562, 324 S.E.2d 241, 248(1985)(quoting Strickland v. Washington, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984)). Here, defendant cites no error that occurred in the unrecorded portions of the trial. Thus, even assuming arguendo that counsel's performance was deficient for failure to request that the proceedings be recorded, defendant shows no prejudice. Id; See also State v. Crawford, 163 N.C. App. 122, 128, 592 S.E.2d 719, 724 (2004) (trial attorney's failure to request a recording of jury voir dire did not constitute ineffective assistance of counsel). Furthermore, defendant's argument that the failure of trial counsel to request recordation deprived him of effective appellate review and effective assistance of appellate counsel was expressly rejected by this Court in State v. Verrier, 173 N.C. App. 123, 617 S.E.2d 675 (2005). Accordingly, the assignment of error is overruled.
Defendant next argues that the trial court abused its discretion by failing to sua sponte order recordation of jury voir dire and closing arguments, depriving him of meaningful appellate review and the effective assistance of appellate counsel. However, this Court rejected the same argument in State v. Price, 170 N.C. App. 57, 67, 611 S.E.2d 891, 898 (2005). Thus, this assignment of error is likewise overruled. Accordingly, we find no error.
No error.
Judges WYNN and GEER concur.
Report per Rule 30(e).