IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-287

Filed 18 February 2026

Robeson County, No. 20CR052504-770

STATE OF NORTH CAROLINA

v.

JERRY LOCKLEAR, Defendant.

Appeal by Defendant from judgment entered 15 April 2024 by Judge James G. Bell in Robeson County Superior Court. Heard in the Court of Appeals 19 November 2025.

> *Law Office of Caryn Strickland, by Attorney Caryn Strickland, for defendant-appellant.*
>
> *Attorney General Jeff Jackson, by Special Deputy Attorney General Brenda Menard, for the State.*

STADING, Judge.

Jerry Locklear ("Defendant") appeals from final judgment entered pursuant to a jury verdict convicting him of second-degree murder. On appeal, Defendant asserts his trial attorney's failure to request recordation of closing arguments amounted to ineffective assistance of counsel ("IAC"). Alternatively, Defendant asks this Court to invoke N.C. R. App. P. 2 to review whether his trial attorney's failure to request recordation of the full trial proceedings violated his constitutional right to due

process. After careful consideration, we conclude that Defendant did not receive IAC and decline to invoke Rule 2.

## I. Factual & Procedural Background

This case deals with the death of Melissa Lowry ("Decedent") after Defendant ran her motor vehicle off a road in Robeson County. On 21 January 2022, the Robeson County Grand Jury returned a true bill of indictment, charging Defendant with second-degree murder and felony hit and run. The State, however, dismissed the felony hit and run charge at the outset of trial.

Defendant's trial commenced on 9 April 2024, wherein the evidence tended to show that on the night of 23 June 2020, Defendant operated his sport utility vehicle ("SUV") on Cabinet Shop Road.[1] In a recorded noncustodial interview[2] with the Robeson County Sheriff's Office, Defendant conceded that: he and Decedent had previously dated; Decedent came over to his house on the night in question asking for money; he followed Decedent in his SUV at the time of the wreck; he began speeding when Decedent began speeding; and, after seeing Decedent run off the road, he returned to the scene, but did not stop.

Lieutenant Graham with the Robeson County Sheriff's Office responded to the

---

[1] Decedent contacted 911 during the incident, stating: "there is a car that is trying to run me off the road on Cabinet Shop Road." She stated the vehicle following her was a Suburban, and that the vehicle struck her vehicle numerous times. The recording of this 911 call was introduced into evidence as an exhibit and published to the jury.

[2] Defendant's interview was admitted into evidence and published to the jury.

scene of the accident. Lieutenant Graham testified to his observations upon arriving

at the scene:

> A. . . . [W]hen I was walking up to try to see, I started observing some what we call yaw marks on the pavement, and they were leading up under the fire truck. At the time I was documenting all this down and then being at the point, you know, I got the Evans Cross Roads Fire Department to move their truck so I could see which way these yaw marks was leading to the vehicle.
>
> Q. Yaw marks, what is that?
>
> A. Yaw marks is when a rotating tire starts to slide on its axis across pavement. It's showing that the tire is actually sliding instead of turning with the pavement.

Lieutenant Graham testified that Defendant's SUV sustained "damage to the front

license plate," damage "to the right of the license plate," and damage to "the front

bumper." He added that Decedent's vehicle sustained damage to the rear bumper

where the license plate should have been located. Upon reviewing the photographic

evidence, Lieutenant Graham noted that the damage to both vehicles was similar in

size—approximately five-to-six inches to Decedent's vehicle, and approximately six-

to-seven inches to Defendant's SUV.

Several other witnesses near the scene of the accident also testified at trial.

Chief Dial, the Chief of the Evans Fire Department, testified to observing two vehicles

driving erratically near the 1500 block of Cabinet Shop Road. Chief Dial noted that

shortly after midnight, he was traveling down Cabinet Shop Road when he saw two

vehicles rapidly approaching him. Chief Dial added that he had to pull onto "the

grass to keep the vehicles from hitting" him. Chief Evans observed the vehicles traveling at a "high rate of speed" and were less than a car-length apart. Shortly thereafter, Chief Evans was dispatched to the accident in question, which occurred near the 200 block of Cabinet Shop Road. Mr. Barnes, a local resident who was parked in the Cabinet Shop Road area, heard "eeek, boom, boom" while parked in his vehicle. He noted that the sounds were consistent with a vehicle striking another "two or three times." Upon looking up, Mr. Barnes saw Decedent's vehicle in a ditch, prompting him to drive up to Decedent to find out if she needed assistance. Mr. Barnes testified that when he was talking to Decedent, "a SUV type, big vehicle" drove by the scene.

After the State rested its case-in-chief, Defendant moved to dismiss the second-degree murder charge. The trial court denied his motion. Defendant thereafter elected not to present evidence and renewed his motion to dismiss at the close of all evidence. Again, the trial court denied his motion.

At the close of the charge conference, the trial court asked whether defense counsel planned to make any concessions in his closing argument:

> THE COURT: Anything else we need to address? Here's the verdict sheet. Guilty of second degree or guilty of involuntary manslaughter or guilty of misdemeanor death by vehicle or not guilty. So when you make your closing you are not conceding anything, are you?
>
> [DEFENSE COUNSEL]: If between now and Monday morning I decide that we will, I will let you know so that we can cross that bridge. But at this point in time I don't

anticipate that.

> THE COURT: Here's the verdict sheet. Let me know if you do.

Upon reconvening after the weekend, and immediately before closing arguments, the trial court twice asked whether the parties had any further matters to address:

> THE COURT: All right. Anything we need to address?
>
> [THE STATE]: Nothing for the State, Your Honor.
>
> THE COURT: So you'll go first?
>
> [THE STATE]: Yes, Your Honor.
>
> THE COURT: Then you'll go last?
>
> [DEFENSE COUNSEL]: Yes, sir.
>
> THE COURT: Then I'll give the instructions, then we'll send them out. And we're getting rid of the two alternates, right?
>
> . . . .
>
> THE COURT: Anything else?
>
> [THE STATE]: I would like the podium, if one of the bailiffs could move it.
>
> THE COURT: You want the podium?
>
> [THE STATE]: Yes, please.
>
> THE COURT: You want the blinds closed, or is that good?
>
> [THE STATE]: No, Judge.
>
> THE COURT: All right. If y'all are ready then--or do you

need a minute to get set up.

[THE STATE]: No, Your Honor. That's fine. I'm good.

THE COURT: So we heard all the motions. We did all of
that, didn't we?

At this time, defense counsel did not inform the trial court that his position had

changed with respect to concessions. Each party gave a closing argument, and

neither was recorded.

Following deliberations, the jury delivered a guilty verdict, convicting

Defendant of second-degree murder. The trial court sentenced Defendant, as a prior

record level VI, to a consolidated term of 450–552 months' imprisonment. Defendant

entered oral notice of appeal after sentencing.

## II. Analysis

Defendant argues that his trial attorney rendered IAC by failing to request

recordation of closing arguments under N.C. Gen. Stat. § 15A-1241 (2023).

Alternatively, Defendant asks this Court to invoke N.C. R. App. P. 2 to address

whether his trial attorney's failure to request recordation of closing arguments

violated his constitutional right to due process. For the reasons below, we disagree

with Defendant's IAC contentions and decline to invoke Rule 2.

## A. IAC

Defendant maintains that his trial counsel rendered IAC by failing to request

that closing arguments be recorded pursuant to N.C. Gen. Stat. § 15A-1241 because:

the North Carolina Indigent Defense Services Manual ("IDS manual") recommends recordation under section 15A-1241; defense counsel's failure to request recordation of the closing arguments denied him meaningful appellate review, amounting to prejudice; no other reconstructed record of the closing arguments would suffice as a substitute for the transcript; and the recordation of closing arguments is relevant to the claims raised on appeal. Our review of applicable precedent leads us to disagree.

"Whether a defendant received IAC at trial is a question of law reviewable *de novo*." *State v. Parker*, 290 N.C. App. 650, 653, 893 S.E.2d 544, 547 (2023). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Clemons*, 274 N.C. App. 401, 409, 852 S.E.2d 671, 676 (2020) (cleaned up).

"A defendant's right to counsel, as guaranteed by the Sixth Amendment to the United States Constitution, includes the right to effective assistance of counsel." *State v. Todd*, 369 N.C. 707, 710, 799 S.E.2d 834, 837 (2017). "When a defendant attacks his conviction on the basis that counsel was ineffective, he must show that his counsel's conduct fell below an objective standard of reasonableness." *State v. Braswell*, 312 N.C. 553, 561–62, 324 S.E.2d 241, 248 (1985). Our jurisprudence establishes "a two-pronged test for determining whether a defendant has received ineffective assistance of counsel." *Todd*, 369 N.C. at 710, 799 S.E.2d at 837. That test provides:

> First, the defendant must show that counsel's performance

was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). "Thus, both deficient performance and prejudice are required for a successful ineffective assistance of counsel claim." *Todd*, 369 N.C. at 711, 799 S.E.2d at 837.

"IAC claims brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing." *State v. Fair*, 354 N.C. 131, 166, 557 S.E.2d 500, 524 (2001). That said, "should the reviewing court determine that IAC claims have been prematurely asserted on direct appeal, it shall dismiss those claims without prejudice to the defendant's right to reassert them during a subsequent MAR proceeding." *Id.* at 167, 557 S.E.2d at 525.

Here, Defendant asserts he received IAC because his trial counsel failed to request that closing arguments be recorded under N.C. Gen. Stat. § 15A-1241(a). Defendant's arguments are rooted in a hypothetical assertion—that defense counsel *may* have conceded guilt during closing argument without his permission, a violation

of *State v. Harbison,* and it is impossible to discern whether such concession occurred since no record of the closing arguments exists. 315 N.C. 175, 180, 337 S.E.2d 504, 507–508 (1985) (noting that "ineffective assistance of counsel, per se in violation of the Sixth Amendment, has been established in every criminal case in which the defendant's counsel admits the defendant's guilt to the jury without the defendant's consent.").

Subsection 15A-1241(a) provides the trial court must ensure that a court reporter makes a record "of all statements from the bench and all other proceedings except" as follows:

> (1) Selection of the jury in noncapital cases;
>
> (2) Opening statements and final arguments of counsel to the jury; and
>
> (3) Arguments of counsel on questions of law.

*Id.* That said, "*[u]pon motion* of any party of the judge's own motion," jury selection, opening statements, and closing arguments must be recorded. *Id.* § 15A-1241(b) (emphasis added).

The North Carolina Supreme Court's decision in *State v. Hardison* is particularly instructive. 326 N.C. 646, 392 S.E.2d 364 (1990). In that case, the defendant asserted he received IAC since his trial attorney did not request recordation "of the jury selection, the bench conferences, and the opening and closing arguments of counsel." *Id.* at 660–61, 392 S.E.2d at 372. The defendant maintained

he satisfied the first prong of *Strickland*—deficient performance—by "showing that his counsel failed to request a transcript of all proceedings." *Id.* at 661, 392 S.E.2d at 373. Upon analyzing the issue, the Court held that under a plain reading of section 15A-1241, recordation of jury selection, opening statements, and closing arguments is permissive as opposed to mandatory. *Id.* Further, the defendant did "not assign any error regarding the selection of the jury in this case." *Id.* The Court also determined that since the "defendant . . . made no attempt to reconstruct the record of any particular bench conference and . . . [made] no specific allegations as to a particular conference," he failed to demonstrate IAC. *Id.* at 661–62, 392 S.E.2d at 373 (cleaned up).

Following *Hardison*, prior panels of this Court have consistently held that a trial attorney's failure to request recordation did not amount to IAC for varying reasons. *See, e.g., State v. Thomas*, 187 N.C. App. 140, 147, 651 S.E.2d 924, 928 (2007) (citation modified) ("A defendant cannot establish ineffective assistance of counsel for failure to request recordation of the jury selection and bench conferences where no specific allegations of error were made and no attempts were made to reconstruct the transcript. Moreover, this Court has held that a defendant cannot establish prejudice as a result of defense counsel's failure to request recordation of those items specifically exempted from the recording statute."); *State v. Verrier*, 173 N.C. App. 123, 130, 617 S.E.2d 675, 680 (2005) (declining to find IAC where defense counsel failed to request recordation of jury selection, bench conferences, opening statements,

and closing arguments since these portions of trial are excluded under G.S. 15A-1241); *State v. Clodfelter*, 203 N.C. App. 60, 69, 691 S.E.2d 22, 28 (2010) ("This Court has repeatedly applied [G.S. 15A-1241] to uphold cases in which these statements and more were omitted from the record."); *State v. Sutton*, 169 N.C. App. 90, 94, 609 S.E.2d 270, 274 (2005) (holding that the defendant failed to demonstrate IAC as a result of defense counsel's failure to request recordation of the full trial proceedings since the defendant did not make a specific assertion of improper conduct at trial and failed to sufficiently demonstrate prejudice); *State v. Crawford*, 163 N.C. App. 122, 129, 592 S.E.2d 719, 724 (2004) (holding that the defendant failed to demonstrate IAC as a result of defense counsel's failure to request recordation of jury selection since the defendant failed to make a specific allegation of juror partiality and failed to sufficiently demonstrate prejudice).

In *Clodfelter*, a prior panel of this Court was faced with a similar task. 203 N.C. App. 60, 691 S.E.2d 22. There, the defendant asserted he received IAC as a result of his trial attorney's failure to request that opening and closing statements be recorded. *Id.* at 69, 691 S.E.2d at 28. Upon analyzing the issue, this Court reasoned that a failure to request recordation does not amount to "a severe error by trial counsel" since the statute does not require such a motion to be made. *Id.* at 69–70, 691 S.E.2d at 28. The Court further reasoned that the defendant failed to sufficiently argue prejudice as a result thereof since he relied on the *mere possibility* that errors *might* have been made:

> As to the second requirement—the showing of prejudice—defendant Jessup does not suggest how the omission of the opening and closing statements prejudiced his case, except that various errors *might* have been made therein upon which an argument *might* be made on appeal. [A] defendant cannot establish ineffective assistance of counsel for failure to request recordation of the jury selection and bench conferences where no specific allegations of error were made and no attempts were made to reconstruct the transcript. Moreover, this Court has held that a defendant cannot establish prejudice as a result of defense counsel's failure to request recordation of those items specifically exempted from the recording statute.

*Id.* at 70, 691 S.E.2d at 28 (cleaned up). Accordingly, the Court overruled the defendant's IAC argument for failure to demonstrate error, much less prejudice. *Id.*

Here, Defendant maintains: "trial counsel's failure to request . . . [recordation] constituted [IAC] because appellate counsel has no meaningful record to review to determine whether trial counsel made *Harbison* admissions without his consent." But Defendant does not allege that a *Harbison* admission occurred. Instead, he argues, "it is reasonable to believe a Harbison admission could have occurred here." Defendant therefore has failed to make a specific allegation pertaining to an improper closing argument; instead, like *Clodfelter* and *Sutton*, Defendant's assertions are rooted in the mere possibility of an error, as he is uncertain whether defense counsel conceded guilt at any juncture during closing argument without his permission. *See Clodfelter*, 203 N.C. App. at 70, 691 S.E.2d at 28 (noting that the "defendant . . . does not suggest how the omission of the opening and closing statements prejudiced his case, except that various errors *might* have been made therein upon which an

argument *might* be made on appeal."); *see also Sutton*, 169 N.C. App. at 94, 609 S.E.2d at 273 (citation modified) ("Defendant first argues that his attorney was ineffective in that he failed to request recordation of jury selection, opening statements, and closing arguments because recording these portions of the trial would have shown whether the prosecutor used improper argument to persuade the jury to convict [defendant] of the charges. Defendant does not assert that any such improper conduct actually occurred at trial."). Moreover, precedent reveals that a failure to request recordation of closing arguments does not amount to "a severe error by trial counsel" since section 15A-1241 does not require such a motion to be made. *Clodfelter*, 203 N.C. App. at 69–70, 691 S.E.2d at 28. The cold record reveals that Defendant has not met the first prong of *Strickland*. *See Fair*, 354 N.C. at 166–67, 557 S.E.2d at 524–25.

Defendant argues since closing arguments are unavailable for review in the absence of recordation, the inability to review for a hypothesized *Harbison* admission amounts to prejudice. But even if we were to assume, arguendo, that defense counsel rendered deficient performance and Defendant made an adequate attempt to reconstruct the record, "a defendant cannot establish prejudice as a result of defense counsel's failure to request recordation of those items specifically exempted from the recording statute." *Thomas*, 187 N.C. App. at 147, 651 S.E.2d at 928 (citing *State v. Price*, 170 N.C. App. 57, 67, 611 S.E.2d 891, 898 (2005)); s*ee also Hardison*, 326 N.C. 646, 661–62, 392 S.E.2d 364, 373, (wherein, "our Supreme Court held that a

defendant cannot establish ineffective assistance of counsel for failure to request recordation of the jury selection and bench conferences where no specific allegations of error were made and no attempts were made to reconstruct the transcript."). Accordingly, Defendant has neither demonstrated deficient performance nor prejudice. *Todd*, 369 N.C. at 711, 799 S.E.2d at 837.

Defendant attempts to distinguish the *Clodfelter* decision, discussed above, by relying upon provisions of the IDS Manual. *See* Danielle M. Carman, *Preserving the Record on Appeal*, Indigent Defense Manual Series (John Rubin, ed., 2020) (citation modified) (noting counsel "should ALWAYS move to have everything recorded under G.S. 15A-1241(b)"). But unlike the plain language of N.C. Gen. Stat. § 15A-1241(a)– (b), *Hardison*, and *Hardison's* progeny, the IDS Manual is not binding precedent. Defendant's arguments in favor of a departure from *Clodfelter* are unmeritorious.

We also note that Defendant conflates our IAC precedents about a failure to request recordation under N.C. Gen. Stat. § 15A-1241 with our precedents dealing with whether a defendant is denied meaningful appellate review as a result of a missing transcript. *Compare Clodfelter*, 203 N.C. App. at 70, 691 S.E.2d at 28 (quoting *Thomas*, 187 N.C. App. at 147, 651 S.E.2d at 928) (cleaned up) (emphasis added) ("A defendant cannot establish ineffective assistance of counsel for failure to request recordation of the jury selection and bench conferences where no *specific* allegations of error were made and no attempts were made to reconstruct the transcript."); *with State v. Yates*, 262 N.C. App. 139, 141, 821 S.E.2d 650, 652 (2018)

(first quoting *In re Shackleford*, 248 N.C. App. 357, 360, 789 S.E.2d 15, 18 (2016) (then quoting *State v. Neely*, 21 N.C. App. 439, 441, 204 S.E.2d 531, 532 (1974) (cleaned up) ("This Court has explained that [o]ur caselaw contemplates the possibility that the unavailability of a verbatim transcript may in certain cases deprive a party of its right to meaningful appellate review and that, in such cases, the absence of the transcript would itself constitute a basis for appeal. . . . To determine whether the right to a meaningful appeal has been lost, our Courts conduct a three-step inquiry.")).

Defendant cites *In re Shackleford* to support the proposition that a defendant need not identify a specific error or defect in a missing transcript to demonstrate prejudice for his IAC claim. 248 N.C. App. 357, 789 S.E.2d 15 (2016). But *Shackleford* dealt with whether the respondent was "entitled to a new involuntary commitment hearing" since the verbatim transcript was missing in its entirety. *Id.* at 360, 789 S.E.2d at 17. In that case, "no transcript of the hearing could be prepared because the recording equipment in the courtroom had failed to record the hearing and there had not been a court reporter present in the courtroom." *Id.* As a result, the defendant maintained he was entitled to a new hearing "because the lack of a verbatim transcript of the underlying hearing denied him his right to meaningful appellate review." *Id.* Moreover, *Shackleford* dealt with the requirements of N.C. Gen. Stat. § 122C-268(i) (2023), which notes, "a copy of all documents admitted into evidence and a transcript of the proceedings shall be furnished to the respondent on

request by the clerk upon the direction of a district court judge." (citation modified). And unlike this case, the *Shackleford* decision did not deal with allegations of IAC. *Cf. id.* at 360, 789 S.E.2d at 18. Accordingly, Defendant's reliance upon *Shackleford* is misplaced.

Defendant also erroneously relies on *Yates* for similar reasons. 262 N.C. App. 139, 821 S.E.2d 650. *Yates* dealt with the fact that "a portion of the trial transcript" was completely missing. *Id.* at 141, 821 S.E.2d at 652. Notably, the portion that was missing involved the State's direct and cross-examination of the alleged victim. *Id.* at 142, 821 S.E.2d at 653. On appeal, the defendant asserted "that he [was] entitled to a new trial because the incomplete transcript ha[d] deprived him of a meaningful appeal." *Id.* at 141, 821 S.E.2d at 652 (citation modified). However, the *Yates* decision did not concern allegations of IAC as a result of a failure to request recordation under section 15A-1241; it dealt with whether the defendant was "denied a meaningful appeal because a portion of the trial transcript" was missing. *Id.* at 141, 821 S.E.2d at 652.

Finally, Defendant's reliance on *Hardy v. United States*, 375 U.S. 277, 84 S. Ct. 424 (1964), and *Draper v. Washington*, 372 U.S. 487, 83 S. Ct. 774 (1963), is likewise misplaced. The *Hardy* decision addressed the inability of a defendant to access a trial transcript on appeal, including the presentation of the defendant's case-in-chief and the trial court's charge to the jury. *Hardy*, 375 U.S. at 282, 84 S. Ct. at 428. That decision did not concern IAC; it dealt with whether an indigent defendant possessed

a right to a free trial transcript on appeal under the United States Code and the Federal Rules of Criminal Procedure when submitting "an appeal *in forma pauperis*." *Id.* at 278–89, 84 S. Ct. at 425–26. Also, the *Draper* decision concerned petitioners who did not have "any portion of a stenographic transcript of the jury trial." 372 U.S. at 493, 83 S. Ct. at 778. The *Draper* decision did not involve allegations of IAC; instead, it dealt with the constitutional rights of indigent defendants to free transcripts under Washington State law. *Id.* at 494–95, 83 S. Ct. at 778.

Defendant relies on other precedents in furtherance of his IAC contentions, including *Entsminger v. Iowa*, 386 U.S. 748, 752, 87 S. Ct. 1402, 1404 (1967), *Mayer v. Chicago*, 404 U.S. 189, 195, 92 S. Ct. 410, 415 (1971), and *Britt v. North Carolina*, 404 U.S. 226, 227, 92 S. Ct. 431, 433 (1971). Like *Hardy* and *Draper*, we fail to see the relevance of these decisions to the IAC question before us.

For all these reasons, we hold that Defendant has failed to demonstrate IAC as a result of defense counsel not requesting recordation of closing arguments under section 15A-1241. Accordingly, Defendant's IAC claim is overruled.

**B. Rule 2**

Defendant next asks this Court to invoke N.C. R. App. P. 2 to address whether defense counsel violated his constitutional right to due process by failing to request full recordation of the trial proceedings. For the reasons below, we decline to invoke Rule 2.

It is well settled that "when a defendant fails to raise a constitutional

argument at the trial court level, it is unpreserved for appellate review pursuant to" N.C. R. App. P. 10. *State v. McClinton*, __ N.C. App. __, __, 922 S.E.2d 190, 198 (2025) (citation modified); *State v. Lloyd*, 354 N.C. 76, 86–87, 552 S.E.2d 596, 607 (2001) (noting that "constitutional issues not raised and passed upon at trial will not be considered for the first time on appeal").

That said, N.C. R. App. P. 2 "allows us to set aside Rule 10, and consider" a defendant's unpreserved constitutional argument when certain criteria are met. *McClinton*, __ N.C. App. at __, 922 S.E.2d at 199; *State v. Griffin*, 298 N.C. App. 85, 93, 914 S.E.2d 8, 13 (2024). Rule 2 states:

> To prevent manifest injustice to a party, or to expedite decision in the public interest, either court of the appellate division may, except as otherwise expressly provided by these rules, suspend or vary the requirements or provisions of any of these rules in a case pending before it upon application of a party or upon its own initiative, and may order proceedings in accordance with its directions.

N.C. R. App. P. 2.

"The text of Rule 2 provides two instances in which an appellate court may waive compliance with the appellate rules: (1) '[t]o prevent manifest injustice to a party'; or (2) 'to expedite decision in the public interest.'" *State v. Hart*, 361 N.C. 309, 315, 644 S.E.2d 201, 205 (2007) (cleaned up). "Rule 2 relates to the residual power of our appellate courts to consider, in exceptional circumstances, significant issues of importance in the public interest or to prevent injustice which appears manifest to the Court and only in such instances." *Id.* at 315–16, 644 S.E.2d at 205 (cleaned up).

"The exercise of Rule 2 [is] intended to be limited to occasions in which a fundamental purpose of the appellate rules is at stake, which will necessarily be rare occasions." *Id.* at 316, 644 S.E.2d at 205 (cleaned up).

"This assessment—whether a particular case is one of the rare instances appropriate for Rule 2 review—must necessarily be made in light of the *specific circumstances of individual cases and parties*, such as whether substantial rights of an appellant are affected." *State v. Campbell*, 369 N.C. 599, 603, 799 S.E.2d 600, 602 (2017). That is, "precedent cannot create an automatic right to review via Rule 2. Instead, whether an appellant has demonstrated that his matter is the rare case meriting suspension of our appellate rules is always a discretionary determination to be made on a case-by-case basis." *Id.* at 603, 799 S.E.2d at 603.

In this case, Defendant contends that this Court should invoke Rule 2 since his substantial rights have been impacted. Defendant maintains: "This case is unlike the run-of-the [mill] case where a defendant has made generalized allegations of error due to a missing transcript but is unable to show any specific prejudice," citing to *State v. Hardison*, 326 N.C. at 661–62, 391 S.E.2d at 373. Defendant further argues that the gravity of the charge, the severity of the punishment, and the age of Defendant must be taken into consideration, as they "weigh heavily in favor of Rule 2 review." In Defendant's view, denying Rule 2 review under these circumstances would amount to manifest injustice.

Our review leads us to conclude that Defendant has failed to demonstrate

sufficient error warranting our discretionary invocation of Rule 2 to prevent manifest injustice. Contrary to Defendant's urging, we have already concluded that he failed to make a specific assertion of error like the defendants in *Hardison* and *Clodfelter*—illustrated in section A of this opinion. Defendant's argument to this effect merely amounts to a recitation of his argument pertaining to IAC. Moreover, when addressing the defendant's similar IAC argument in *Verrier*, our Court concluded that the defendant's due process rights were not violated in light of defense counsel's failure to request recordation of matters not required under N.C. Gen. Stat. § 15A-1241. *See Verrier*, 173 N.C. App. at 130, 617 S.E.2d at 680 (overruling the defendant's argument—that his due process rights were violated as a result of defense counsel's failure to request recordation of the full trial proceedings—since recordation of opening statements, closing arguments, and jury selection is permissive as opposed to mandatory under section 15A-1241, and it is not the Court's function "as the judiciary to modify statutory law").

Defendant has failed to establish error to sufficiently warrant the invocation of Rule 2. *See Griffin*, 298 N.C. App. at 93, 914 S.E.2d at 14 ("Although a constitutional right is a substantial right, Defendant has failed to demonstrate error relating to a substantial right."); *see also State v. Bishop*, 255 N.C. App. 767, 770, 805 S.E.2d 367, 370 (2017). Accordingly, we decline to invoke Rule 2 in our discretion.

### III. Conclusion

For the reasons above, we conclude that Defendant has failed to show that he

received ineffective assistance of counsel from his trial attorney.  We also decline to invoke Rule 2.

NO ERROR.

Judges ZACHARY and FLOOD concur.